# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WESTGATE RESORTS, LTD., et al.,**

    **Plaintiffs,**

v.                                        Case No: 6:18-cv-359-Orl-31TBS

**U.S. CONSUMER ATTORNEYS, P.A.,
HENRY N. PORTNER and ROBERT A.
SUSSMAN,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 22) filed by U.S. Consumer Attorneys, P.A. ("**USCA**"), Henry N. Portner ("**Portner**"), and Robert A. Sussman ("**Sussman**") (collectively, "**Defendants**"), and the response in opposition (Doc. 29) filed by Westgate Resorts, LTD., et al. ("**Westgate**" or "**Plaintiffs**").

**I.    Background**

Plaintiffs are a group of entities engaged in the business of developing, managing, financing, and selling Westgate timeshare resort properties throughout the United States, including Florida. (Doc. 1, ¶ 2). Defendants Portner and Sussman are, respectively, the owner and manager of USCA, a law firm purportedly "dedicated to protecting consumers." (*Id.* ¶¶ 3, 55).

According to Plaintiffs, Portner and Sussman have concocted a scheme to induce timeshare owners, including identifiable Westgate timeshare owners ("**Westgate Owners**"), to breach their timeshare agreements ("**Timeshare Agreements**") for Defendants' pecuniary gain. (*Id.* ¶¶ 3, 54). To facilitate this scheme, Portner and Sussman lure Westgate Owners into hiring USCA by advertising, through their website, false statements about Plaintiffs and false promises to relieve

Westgate Owners from their Timeshare Agreements. (*Id.* ¶¶ 3, 59–60). Plaintiffs specifically allege that Defendants:

> 61.   . . . advertise[] that USCA can "[g]et [owners] out of [their] . . . timeshare [f]orever," if any particular owner was:
>
> - Presented the membership offer for more than 90 minutes.
> - Invited to a free gift, trip, meal or event, which turned into a sales pitch.
> - Told that the timeshare value would go up in value over time.
> - Told that they could sell and/or rent their timeshare whenever they wished.
> - Promised that the timeshare company would buy back the timeshare interest if an owner so desired.
>
> 62.   . . . misleadingly call[] the above "tactics" unethical and coercive and misrepresents to owners that any of the foregoing advertised reasons are legally sufficient grounds to terminate a timeshare contract. However, none of these so-called "tactics" are valid legal bases for a timeshare owner to cease making payments pursuant to their binding contracts with timeshare companies such as Westgate.
>
> 63.   . . . offer a misleading "100% satisfaction guarantee," based on the "confidence in [USCA's] lawyers' skills, experience, judgment and their commitment to delivering high quality, client focused service," and further promise to terminate the timeshare owners' interests in "12 months or less."
>
> 64.   . . . falsely intimate that purchasers of Westgate timeshares were "TRICKED" and "SCAMMED", into making their purchases and that all Westgate sales were based on "lies, fraud and misrepresentations." As a result, through USCA's website, Portner and Sussman assure owners that they can "legally cancel [their] Westgate Timeshare [Agreements]."
>
> 65.   . . . tout[] USCA's "timeshare cancellation process" as a "PROVEN SUCCESS" and "top-rated by many timeshare owners that have successfully ended their timeshare obligations." As support for these claims, the [w]ebsite references two lawsuits purportedly brought by USCA against Westgate, claiming that USCA "goes the extra mile to get you out of your timeshare contract." However, such claims and only serve to mislead because the lawsuits cited have actually been favorably decided for Westgate—not USCA's clients.

(*Id.* ¶¶ 61–65).

Plaintiffs claim that Defendants' false and misleading statements create the impression that Plaintiffs are engaged in unlawful activity and induce unsuspecting Westgate Owners to pay "large, upfront sign-up fees" to retain Defendants' services. (*Id.* ¶¶ 5, 66). Plaintiffs also claim that Defendants urge Westgate Owners to stop making payments under their Timeshare Agreements. (*Id.* ¶¶ 5, 66). Westgate Owners are then led to believe that USCA will review their individual cases and negotiate with Plaintiffs regarding their Timeshare Agreements. (*Id.* ¶ 67). By design, however, Defendants never provide Westgate Owners with legitimate representation. (*Id.* ¶ 68). Indeed, Westgate Owners never meet or speak with any of USCA's attorneys. (*Id.* ¶¶ 6, 68).

Instead, without conducting any meaningful investigation into the specifics of their clients' cases, Defendants send boilerplate representation letters to Plaintiffs, instructing them to cease communicating with Defendants' clients. (*Id.* ¶¶ 6, 68–69). In the letters, Defendants also state that their clients wish to terminate their Timeshare Agreements but provide no legal or factual basis for termination. (*Id.* ¶¶ 6, 68–69). Because Westgate Owners are supposedly represented by counsel and Plaintiffs are forbidden from communicating with them, Westgate Owners are completely unaware—often until they suffer adverse consequences—that Defendants have accomplished nothing for them. (*Id.* ¶ 71).

As a final step to their scheme, Defendants direct lawyers hired by USCA to record deeds purporting to transfer the Westgate Owners' timeshare interests back to Plaintiffs or to an individual serving as a strawman owner. (*Id.* ¶¶ 7, 72–74). "While the unilaterally executed deeds are meant to prove to Defendants' clients that the matter has been resolved in their favor and that they are relieved from any contractual obligations to [Plaintiffs], the deeds are in fact unlawful and of no force or effect." (*Id.* ¶ 75).

To date, Defendants' conduct has caused identifiable Westgate Owners to default on their payment obligations under their Timeshare Agreements and Plaintiffs to suffer damage to their "goodwill" and "reputation." (*Id.* ¶¶ 77–80). Seeking injunctive and monetary relief, Plaintiffs filed a complaint asserting sixteen claims against Defendants: false advertising in violation of the Lanham Act, 15 U.S.C. 1125(a) (Counts I–III); tortious interference with existing contracts (Counts IV–VI); tortious interference with advantageous business relationships (Counts VII–IX); civil conspiracy (Count X); violations of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") (Counts XI–XIII); and misleading advertising in violation of Fla. Stat. § 817.41 (Counts XIV–XVI). (*Id.* ¶¶ 83–319).

Defendants now move for dismissal of the claims asserted against them. (Doc. 22).

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Analysis**

As an initial matter, Defendants contend that the Complaint—which contains 319 numbered paragraphs and spans 74 pages—falls short of Rule 8's requirement that the pleader provide a short and plain statement of their claim. (Doc. 22, pp. 4–6). Defendants also contend that the Complaint constitutes an impermissible shotgun pleading because Plaintiffs incorporate the first 82 paragraphs of the Complaint into each of the 16 counts. (*Id.*).

A prolix complaint alone is not sufficient grounds for dismissal under Rule 8. Moreover, the Complaint is not a shotgun pleading because each count does not "adopt[] the allegations of [the] preceding counts, [thereby] causing each successive count to carry all that came before [it]."

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015) (defining four types of shotgun pleadings). As such, the Court will not dismiss the Complaint on these grounds.

## A. Violation of the Lanham Act (Counts I, II, and III)

To state a claim under the Lanham Act, a plaintiff must allege that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

The Lanham Act proscribes "commercial claims that are literally false as a factual matter" and "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999) (citation omitted). "[B]ald assertions of superiority or general statements of opinion" do not result in a violation of the Lanham Act. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000). Similarly, "exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely"—commonly referred to as "puffery"—is not actionable under the Lanham Act. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). To determine if an advertisement is false or misleading, a court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citation omitted).

Defendants argue that Plaintiffs fail to state a claim for false advertising under the Lanham Act because they do not adequately identify false or misleading advertising statements made by

Defendants. (Doc. 22, pp. 6–9). More specifically, Defendants contend that Plaintiffs "selectively cherry-picked phrases from the [USCA] website" rather than quoting the USCA website verbatim or providing copies of its content, which "is insufficient to satisfy Rule 8." (Doc. 22, p. 9). The Court disagrees.

Plaintiffs identify multiple false and misleading statements that Defendants purportedly made. (*See* Doc. 1, ¶¶ 61–65, 92). While Plaintiffs do not quote from the USCA website verbatim, Plaintiffs adequately convey the substance of the website and plead sufficient facts from which the Court can reasonably infer that Defendants' statements were false or misleading when considered in full context. (*See id.*). Thus, the Court declines to dismiss the Complaint on this basis.

Next, Defendants argue that Plaintiffs claims fail because their alleged statements were mere puffery or non-actionable opinions. (Doc. 22, pp. 10–12). However, Defendants' statements do not appear to be general opinions or exaggerated statements; rather, they appear to be assertions of fact upon which a reasonable consumer may rely. Therefore, at this stage in the proceeding, the Court cannot conclude as a matter of law that the statements at issue constitute mere puffery or non-actionable opinions.

Finally, Defendants maintain that Plaintiffs have omitted the necessary allegations of injury and causation for their Lanham Act claim. (*Id.* at 12–14). Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected" by the Lanham Act. *Lexmark*, 134 S. Ct. 1377. To that end, a false advertising claim under the Lanham Act requires that "a plaintiff . . . plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395. The sufficiency of proximate cause allegations turns on whether "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1390. When "a defendant harms a

plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id*. at 1393.

Here, Plaintiffs allege that the Defendants made advertising statements which, *inter alia*, falsely deceived Westgate Owners into believing that Plaintiffs engage in unlawful conduct and falsely guaranteed to relieve Westgate Owners of their Timeshare Agreement obligations. (Doc. 1, ¶¶ 59–66, 87, 92–94). The advertising statements caused identifiable Westgate Owners to retain USCA and to stop making required payments under their Timeshare Agreements. (*Id.* ¶¶ 66, 95–96). As a result, Plaintiffs suffered harm to their reputational and commercial interest. (*Id.* ¶¶ 77–78, 88, 97). When viewed in the light most favorable to Plaintiffs, these allegations sufficiently allege injuries flowing directly from Defendants' statements.

For the foregoing reasons, the Court will deny the motion to dismiss Counts I, II, and III.

**B.     Tortious Interference with Existing Contracts (Counts IV, V, VI)**

Under Florida law, the tort of contractual interference occurs when: (1) a contract exists; (2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a party's rights under the contract; (4) there is no justification or privilege for the interference; and (5) there are damages. *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005). Generally, one cannot tortiously interfere with a contract to which it is a party. *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d DCA 1980). Thus, a plaintiff must allege that the defendant is a third-party—that is, not a party to the contract or an agent of a contracting party. *Abruzzo v. Haller*, 603 So. 2d 1338, 1339–41 (Fla. 1st DCA 1992) (citation omitted).

Defendants argue that, as agents of Westgate Owners, they cannot be liable for tortious interference. The Court is unpersuaded. Although an agent generally cannot be held liable for tortiously interfering with the contract of its principal, an agent's "privilege to interfere" with the

contracts of its principal is not absolute. *Sloan v. Sax*, 505 So.2d 526, 528 (Fla. 3d DCA 1987). The privilege afforded to an agent who gives honest advice that it is in his principal's best interest to breach an existing relationship is not available when an agent acts solely with ulterior purposes and the advice is not in the principal's best interest. *Scussel v. Balter*, 386 So. 2d 1227, 1228–29 (Fla. 3d DCA 1980).

In this case, Plaintiffs allege that Defendants urged Westgate Owners to breach their Timeshare Agreements, not to aid the them in successfully ending their contracts with the Plaintiffs, but "for purely selfish and mercenary reasons in order to obtain large prepaid retainer fees." (Doc. 1, ¶¶ 140, 153, 166). If the Plaintiffs can prove this, Defendants' status as agents of the Westgate Owners would not protect them from liability.

Defendants also argue that Plaintiffs' tortious interference claim should be dismissed because they "fail to allege the existence of any *specific* contract with any *particular* Westgate Owner, that the Defendants have allegedly tortiously interfered with." (Doc. 22, p. 15) (emphasis added). However, this degree of specificity is not required. At the motion to dismiss stage, Plaintiffs need only plead facts that, if true, demonstrate that Defendants tortiously interfered with existing contracts between Plaintiffs and identifiable Westgate Owners. *Twombly,* 550 U.S. at 544. They have done this.

Plaintiffs allege that they had valid and enforceable Timeshare Agreements with identifiable Westgate Owners. (Doc. 1, ¶¶ 45–47, 135, 147, 160). Despite Defendants' knowledge of those existing agreements, Defendants intentionally and unjustifiably induced identifiable Westgate Owners to, *inter alia,* stop making payments to Plaintiffs under their Timeshare Agreements. (*Id.* ¶¶ 66, 77–79, 136–143, 148–156, 161–169). As a result, Plaintiffs suffered damages. (*Id.* ¶¶ 77, 80, 142, 144, 157, 170). When taken together, these allegations allow the Court to infer that Defendants tortiously interfered with Plaintiffs' existing contracts with Westgate Owners.

Therefore, the motion to dismiss Counts IV, V, and VI will be denied.

**C.    Tortious Interference with Advantageous Business Relationships (Counts VII, VIII, and IX)**

To plead a claim for tortious interference with an advantageous business relationship, a plaintiff must allege: (1) the existence of a business relationship; (2) that the defendant knew of the relationship; (3) the defendant intentionally and unjustifiedly interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id*. at 815.

Here, Plaintiffs' plead no facts to suggest that they had an actual and identifiable understanding or agreement with Westgate Owners which would have been completed if the Defendants had not interfered. Plaintiffs simply allege that they have advantageous business relationships with Westgate Owners for "future business" because Westgate Owners "have equity interests [that] *may be used* as credits towards the purchase of an upgraded timeshare interest." (Doc. 1, ¶ 172) (emphasis added).

As Defendants correctly note, these allegations are insufficient to support an existing business relationship.[1] *See Realauction.com, LLC v. Grant St. Grp., Inc*., 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011) ("Speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship."); *see also Orange Lake Country Club, Inc. v. Castle Law*

---

[1] Plaintiffs also allege that they have "advantageous business relationships with Westgate Owners pursuant to their contracts." (Doc. 1, ¶¶ 172, 181, 191). But, Plaintiffs cannot solely rely those allegations to support their claim for tortious interference with a business relationship because that would result in a duplicative claim for tortious interference with existing contracts.

*Grp., P.C.*, No. 6:17-cv0-1044-ORL-31DCI, 2017 WL 6406866, at *3 (M.D. Fla. Dec. 15, 2017) (dismissing a claim for tortious interference with business relationships where the plaintiffs made similar allegations). As such, Counts VII, VIII, and IX will be dismissed without prejudice.

### D. Civil conspiracy (Count X)

A civil conspiracy claim requires: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008). Defendants argue that Plaintiffs conspiracy claim should be dismissed because their underlying tort claims fail, and Florida does not recognize an independent action for conspiracy. (Doc. 22, p. 18.) But, Plaintiffs' underlying tort claims survive dismissal. Therefore, Defendants' argument is meritless.

### E. Violation of FDUTPA (Counts XI, XII and XIII)

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).[2] To state a claim under the FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc*., 169 So. 3d 164, 167 (Fla. 4th DCA 2015). Defendants contend that Plaintiffs do not adequately state a FDUTPA claim because

---

[2] For purposes of FDUTPA, the term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or disturbing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

Plaintiffs have failed to "plead actual damages" and to "satisfy the 'trade or commerce' element of [their] FDUTPA claim[s]."[3] (Doc. 22, p. 19).

In the Complaint, Plaintiffs allege that Defendants engaged in unconscionable, unfair, and deceptive acts or practices by, *inter alia*, "producing false and misleading advertising and soliciting Westgate Owners through such advertising which deceives Westgate Owners into believing that they may cancel their [T]imeshare [Agreements] without any legal basis or reason." (Doc. 1, ¶¶ 218, 241, 265). This purported conduct falls squarely within the FDUTPA's broad definition of "trade or commerce". Thus, Defendants' first argument fails.

Defendants' second argument is equally unavailing. Plaintiffs claim that they have "been damaged in the amounts due and owing to them by virtue of the Westgate Owners halting their payment of mortgage, maintenance, and/or tax payments at the instruction of [Defendants]." (*Id.* ¶¶ 225, 249, 273). These allegations suffice to raise an inference of actual damages. *See Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-ORL-37DCI, 2018 WL 735627, at *9 (M.D. Fla. Jan. 26, 2018) (finding that actual damages were properly pled based on similar allegations). Accordingly, the motion to dismiss Counts XI, XII and XIII will be denied.

### F. Misleading Advertising in Violation of Fla. Sta. § 817.41 (Counts XIV, XV and XVI)

A consumer party may state a claim under Fla. Stat. § 817.41 by pleading:

> (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation.

---

[3] Defendants specifically argue that their "alleged conduct does not fall within 'trade or commerce'—at least with respect to Plaintiff's allegations that mischaracterize the Defendants' legal strategies as 'trade or commerce.'" (Doc. 22, p. 23). But, such argument is futile because Plaintiffs satisfy the "trade or commerce" requirement through allegations that Defendants engaged in false and misleading advertising.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1322 (M.D. Fla. 2007). If the party alleging misleading advertising is a consumer, direct reliance is required for asserting a state a claim under § 817.41, but if "the party alleging misleading advertising is a competitor of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to 'stand-in' for the element of direct reliance." *Id*.

Obviously, Plaintiffs are not consumers that suffered an injury in justifiable reliance on a representation Defendants' made to the public. Therefore, Plaintiffs attempt to bring themselves within the ambit of Fla. Sta.§ 817.41 by alleging that they are competitors of Defendants, in that "[Defendants] advertise[] to Plaintiffs' existing client base . . . . in order to persuade them to do business with [Defendants] instead of with [Plaintiffs], and to divert monies due and owing to [Plaintiffs] instead to [Defendants]." (Doc. 1, ¶¶ 285–287, 298–300, 311–313).

This argument fails. Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences overlap, Plaintiffs and Defendants are engaged in entirely different markets. They are adversaries, not competitors. Accordingly, Counts XIV, XV and XVI will be dismissed with prejudice.

## IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 22) filed by U.S. Consumer Attorneys, P.A., Henry N. Portner, and Robert A. Sussman is **GRANTED IN PART AND DENIED IN PART**. Counts VII, VIII, and IX are **DISMISSED WITHOUT PREJUDICE**. Counts XIV, XV and XVI are **DISMISSED WITH PREJUDICE**. In all other respects, the motion is **DENIED.** Should the Plaintiffs wish to file an amended complaint, they must do so on or before October 24, 2018.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 9, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party